# EXHIBIT "A"

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| For Prothonotary Use Only (Docket Number) |
|---|
| **FEBRUARY 2021** |
| E-Filing Number: 2101049941 |
| **000025** |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| TRAVIS S. SWEIGART | KEVIN J. PATTEN |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1396 GEIGERTOWN ROAD GEIGERTOWN PA 19523 | 450 PARK AVENUE PATERSON NJ 07504 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | VOYAGER TRUCKING CORP. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 451 FRELINGHUYSEN AVENUE NEWARK NJ 07114 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 2 | ☒ Complaint  ☐ Petition Action  ☐ Notice of Appeal<br>☐ Writ of Summons  ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☒ Jury<br>☐ Non-Jury<br>☐ Other: | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

| CASE TYPE AND CODE |
|---|
| 2V - MOTOR VEHICLE ACCIDENT |

| STATUTORY BASIS FOR CAUSE OF ACTION |
|---|
| |

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|---|
| | **FILED PRO PROTHY**<br><br>JAN **29** 2021<br><br>**R. SCHREIBER** | YES          NO |

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>TRAVIS S SWEIGART</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| MARK J. LEWINTER | RAYNES LAWN HEHMEYER 1845 WALNUT STREET 20TH FLOOR PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)568-6190 | (215)988-0618 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 36336 | mjlewinter@rayneslaw.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *MARK LEWINTER* | Friday, January 29, 2021, 10:14 am |

FINAL COPY (Approved by the Prothonotary Clerk)

**RAYNES LAWN HEHMEYER**
By:   Mark J. LeWinter, Esquire
       Martin K. Brigham, Esquire
       Daniel Bencivenga, Esquire
Identification Nos: 36336/33717/74198
1845 Walnut Street, Suite 2000
Philadelphia, PA 19103
Telephone (215) 568-6190; Fax (215) 988-0618
mjlewinter@rayneslaw.com; mkb@rayneslaw.com;
dbencivenga@rayneslaw.com

**THIS IS A MAJOR CASE.**
**JURY TRIAL IS DEMANDED**

Filed and Attested by the
Office of Judicial Records
29 JAN 2021 10:54 am
E. SCHRIVER

Attorneys for Plaintiff

---

TRAVIS S. SWEIGART
1396 Geigertown Road
Geigertown, PA 19523
          Plaintiff

    v.

KEVIN J. PATTEN
450 Park Avenue
Paterson, NJ 07504
     and
VOYAGER TRUCKING CORP.
451 Frelinghuysen Avenue
Newark, NJ 07114
          Defendants

:
:
:
:
:
:
:
:
:
:
:
:
:
:

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

JANUARY TERM, 2021

No.

---

### NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.<br><br>You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.<br><br>Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal. |

Philadelphia Bar Association
Lawyer Referral
and Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

Asociacion De Licenciados De Filadelfia
Servicio De Referencia E
Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

**RAYNES LAWN HEHMEYER**
By:    Mark J. LeWinter, Esquire
        Martin K. Brigham, Esquire
        Daniel Bencivenga, Esquire
Identification Nos: 36336/33717/74198
1845 Walnut Street, Suite 2000
Philadelphia, PA 19103
(215) 568-6190; Fax (215) 988-0618
mjlewinter@rayneslaw.com;  mkb@rayneslaw.com;
dbencivenga@rayneslaw.com

                                                Attorneys for Plaintiff

| | |
|---|---|
| TRAVIS S. SWEIGART<br>1396 Geigertown Road<br>Geigertown, PA 19523<br>               Plaintiff<br><br>    v.<br><br>KEVIN J. PATTEN<br>450 Park Avenue<br>Paterson, NJ 07504, and<br><br>VOYAGER TRUCKING CORP.<br>451 Frelinghuysen Avenue<br>Newark, NJ 07114,<br>              Defendants | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>January Term, 2021<br><br>No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

### Introduction

1.      Before dawn on September 9, 2019 on a dark stretch of Route 10 near Morgantown, Berks County, Pennsylvania, **Defendant Kevin Patten**, working for **Defendant Voyager Trucking Corp.**, drove his 38½ ton tractor-trailer into the right of way of, and then ran over **Plaintiff Travis Sweigart** who was driving to work on his motorcycle.

2.      At the stop sign at the bottom of the ramp from Exit 1 southbound on I-176, Defendant Patten saw the headlight of Mr. Sweigart's motorcycle on Route 10 approaching from Mr. Patten's left.

3.     Rather than wait a few seconds to allow Mr. Sweigart to pass by safely, Defendant Patten began to turn left and pulled his 68½ foot rig out in front of Mr. Sweigart.

4.     As Mr. Sweigart slowed down and braked to avoid a collision, his motorcycle went down on its right side, staying within his lane of traffic.  Because Mr. Sweigart was almost to a stop by the time his bike went down, he did not then suffer any injuries.

5.     After Mr. Sweigart and his motorcycle were down on the road, Defendant Patten proceeded to run over the motorcycle and Mr. Sweigart with the rear tires of his 77,000-pound tractor-trailer.

6.     Although Defendant Patten then parked his truck near the scene, he did not call 911 or attempt to provide any aid to Mr. Sweigart who was bleeding profusely on the road.  911 was called only after an off-duty police officer arrived on the scene several minutes after the accident.

7.     In failing to render reasonable assistance to Mr. Sweigart at the accident scene, including failing to alert authorities to the accident so that Mr. Sweigart could receive emergency medical care, Defendant Patten violated 75 P.S. §3744(a).

8.     Since the accident, over $970,000 has been paid for the treatment of Mr. Sweigart's injuries, which included: a massive crush injury of the pelvis and multiple fractures of the legs, lower ribs and vertebrae; the permanent placement of a colostomy bag and urinary catheter; a neurogenic bladder; and the amputation of his right leg below the knee.  The cost of Mr. Sweigart's future medical care has been projected to exceed $5.25 million.

9.     At the time of the accident, Defendant Patten was hauling municipal waste to the Conestoga Landfill, 420 Quarry Road, Morgantown, PA for defendant Voyager Trucking Corp., one of the largest waste haulage companies in the northeast and Mr. Patten's employer.

10. Though Voyager Trucking Corp. advertises its commitment to safety, its driver Kevin Patten violated the Pennsylvania Motor Vehicle Code, Federal Motor Carrier Safety Administration Regulations, and basic safety rules for the operation of a commercial tractor-trailer in causing this accident.

**Jurisdiction and Venue**

11. Plaintiff Travis Sweigart resides at 1396 Geigertown Road, Geigertown, PA 19523; he is a resident and citizen of the Commonwealth of Pennsylvania.

12. Defendant Kevin J. Patten resides at 450 Park Avenue, Paterson, NJ 07504; he is a resident and citizen of the State of New Jersey.

13. On the day of the accident, Defendant Patten held a Commercial Driver's License ("CDL") issued by the State of New Jersey.

14. Blue and Green Trucking and Hair, LLC ("Blue and Green") is the registered owner of the 2006 Freightliner Columbia tractor with sleeper cab that Mr. Patten was driving at the time of the accident. Blue and Green was a New Jersey business entity with its registered office at Defendant Patten's home address. By the time of the accident and the filing of this suit, Blue and Green was no longer a valid entity because of its failure to comply with NJ regulatory requirements.

15. Defendant Voyager Trucking Corp. ("VTC") is a New Jersey corporation with its principal place of business located at 451 Frelinghuysen Avenue, Newark, NJ 07114.

16. Defendant VTC is a waste hauling company and motor carrier, specializing in the interstate transportation of municipal and construction waste from transfer stations and manufacturing facilities to landfills and incinerators located in the northeast corridor, including in Philadelphia County.

17.     Defendant VTC is among the largest waste haulers in the tri-state region, transporting more than 1,500,000 tons of municipal and construction waste on an annualized basis. As part of its business, defendant operates a fleet of approximately 200 trucks and 250 trailers which it leases or owns.

18.     Defendant VTC regularly conducts business within Philadelphia County, including the delivery and collection of waste at transfer stations and landfills located in the County.

19.     At all relevant times, defendant Kevin J. Patten was employed as a truck driver by defendant VTC.

20.     At the time of the accident, Mr. Patten was operating a commercial motor vehicle in interstate commerce on behalf of Defendant VTC and under the Motor Carrier Authority of Defendant VTC.

21.     Venue is appropriate in Philadelphia County pursuant to Pa.R.C.P. 1006(c)(1) and 2179(a)(2).

22.     This court has jurisdiction over defendants pursuant to 42 P.S. §5322.

**The Accident**

23.     This accident took place at a T-intersection formed where the southbound Exit 1 from Interstate Highway 176 ("I-176") in Caernarvon Township, Berks County, Pennsylvania terminates into State Highway 10 ("Route 10," also commonly known as Morgantown Road).

24.     For the traffic exiting south from I-176, there is a stop sign at the bottom of the ramp. There are no stop signs or controls affecting traffic traveling on Route 10 which have the right of way.

25.     At the location of the accident, Route 10 travels in an east-west direction, though Route 10 is nominally a north-south road.

26. On September 9, 2019, at approximately 5:30-5:35 a.m. (an hour before sunrise which would be at 6:35 a.m.), Mr. Sweigart was driving his 2002 Yamaha Fazer 1000 cc motorcycle westbound on Route 10 heading toward his work at 836 Peters Road, New Holland, PA. He passed under the I-176 overpass and then was going past the entrance to the ramp from Route 10 to the Pennsylvania Turnpike.

27. At approximately the same time, Mr. Patten had exited the southbound travel lane of I-176 with the intention of turning left onto the eastbound travel lane of Route 10. Mr. Patten was operating a tractor-trailer leased by defendant VTC and used by the company to haul waste.

28. The tractor-trailer was comprised of a 2006 Freightliner Columbia sleeper cab (NJ Plate: AU647H; VIN 1FUJA6CK46LX11119) and a 48-foot trailer (NJ Trailer Tag No. TRY66W). At its rear, the trailer was supported by two axles and eight wheels, four on either side. Together, the tractor-trailer combination measured 68.5-feet in length.

29. At the time of the accident, the trailer was carrying municipal waste that had been loaded onto the trailer three days earlier at a transfer station in Paterson, New Jersey. The tractor-trailer combination weighed more than 77,000 pounds on the day of the accident. Mr. Patten intended to offload the waste at Conestoga Landfill, 420 Quarry Road in Morgantown, PA, located off Route 10, just east of the intersection where the accident would occur.

30. The Defendants' customer for this delivery was Covanta MacArthur (Fulton) which is located in Philadelphia, PA.

31. Before dawn, the accident location is very dark. Although the sides of the trailer did have reflective tape, the tape was covered, at least in part, by residue from municipal waste.

32. As Mr. Patten described to the investigating police officer, after leaving I-176, he brought the tractor-trailer to a halt at the stop sign located at the base of Exit 1.

33.     Looking to his left, Mr. Patten observed the headlight for Mr. Sweigart's motorcycle. As Mr. Patten recounted to the police, the motorcycle was approaching from his left and when Mr. Patten first saw the motorcycle it was "at the on ramp for the Pennsylvania Turnpike."

34.     Assuming that Mr. Patten's description was correct, a motor vehicle traveling within the posted speed limit of 45 mph – as was Mr. Sweigart – would have closed this distance in less time than it took for Mr. Patten to complete his left turn and clear the rear of his trailer out of the oncoming travel lane.  By not waiting a few seconds, Mr. Patten violated safe driving practices and created the likelihood of a collision.

35.     As cautioned in the manual for New Jersey Commercial Drivers,

Be aware of the size and weight of your vehicle when you cross or enter traffic....
Because of slow acceleration and the space large vehicles require, you may need a
much larger gap to enter traffic than you would in a car.  Acceleration varies with
the load.  Allow more room if your vehicle is heavily loaded.  Before you start
across a road, make sure you can get all the way across before traffic reaches you.
(NJ CDL Manual, Section 2.7.7)

36.     As Mr. Patten told the responding police officer, he believed he "had enough room to pull his tractor-trailer across the roadway."  Mr. Patten thus began to turn left onto Route 10, in front of Mr. Sweigart's approaching motorcycle.

37.     When Mr. Sweigart first saw the tractor nearing the bottom of the exit ramp, he believed that the tractor would stop before entering Mr. Sweigart's travel lane.

38.     The tractor continued past the stop sign to the end of the ramp, and then unexpectedly started to pull into Mr. Sweigart's lane.

39.     Mr. Sweigart de-accelerated his motorcycle and applied the brakes.

40.     As he slowed, Mr. Sweigart's motorcycle, possibly from applying the rear brake, went down on its right side.  The momentum rotated the bike in a clockwise direction, leaving Mr.

Sweigart on the bike which was laying on its right side in Mr. Sweigart's travel lane but pointing in the opposite direction.

41.     Mr. Sweigart was not yet injured.

42.     Based on information available to date, Plaintiff believes that the rear of Mr. Sweigart's motorcycle was struck by the rear-wheel tandem on the driver's-side of the trailer. The crushing force of the rear wheels folded the motorcycle seat and frame into Mr. Sweigart's body, shattering his pelvis and causing other catastrophic injuries.

43.     Mr. Sweigart blacked out from the pain caused by the crushing injuries and he recalls waking up several feet from the motorcycle.  Despite his injuries, Mr. Sweigart was able to crawl on his stomach out of his travel lane to the shoulder of the westbound travel lane of Route 10 before again losing consciousness.

44.     Mr. Patten pulled his tractor-trailer onto the shoulder of the eastbound travel lane of Route 10, east of where the accident took place.  He did not call 911 or otherwise attempt to assist Mr. Sweigart.  Indeed, the first 911 call was not placed until after an off-duty police officer – also on his way to work – arrived on the scene.

45.     At the time of the accident, Mr. Patten had a duty to follow all applicable traffic laws.

46.     Mr. Patten had a statutory duty pursuant to 75 P.S. §§ 3322 and 3323 to yield the right-of-way to any vehicle approaching the intersection which was so close as to constitute a hazard.

47.     Upon information and belief, at the time of the accident, apart from Mr. Sweigart's motorcycle, there were no vehicles travelling in the westbound travel lane or the eastbound travel

lanes of Route 10 and no one behind Mr. Patten on the exit ramp. There was and is no justification for Mr. Patten deliberately deciding to pull into the right of way of Mr. Sweigart.

48.     As noted above, the accident occurred before sunrise. Because of limited street lighting at the intersection, Mr. Patten had an enhanced duty to exercise care.

49.     Part of Mr. Patten's duty in connection with driving a tractor-trailer at night included the obligation to inspect the reflectors on the side of the trailer to ensure that the trailer would be visible to approaching vehicles. (NJ CDL Manual, Section 2.11.5)

50.     Upon information and belief, at the time of the accident, the reflectors on the side of the trailer were not clean, adversely impacting the conspicuity of the trailer to approaching drivers, including Mr. Sweigart.

51.     Given the circumstances that preceded this accident, Mr. Patten had a duty not to travel into the path of Mr. Sweigart's motorcycle and should instead have simply waited a few seconds for the motorcycle to pass the intersection. Mr. Patten then would have had a clear and unobstructed path to bring his tractor-trailer across Route 10.

52.     Mr. Patten had a duty to drive carefully and defensively to avoid collisions with other vehicles, including Mr. Sweigart's motorcycle.

53.     Mr. Patten likewise had a duty to pay attention to the task of driving and not become distracted.

54.     Mr. Patten breached his duties to Mr. Sweigart.

55.     The collision was not due to any act or failure to act on the part of Mr. Sweigart.

56.     As a direct result of the actions, omissions, or inactions of the Defendants, Plaintiff Travis Sweigart sustained serious and permanent injuries, including, but not limited to, severe crushing injuries to his abdomen, lower back, and pelvis; an open book pelvic injury with right hip

dislocation and acetabular fracture; open fractures along both legs; closed fractures of his lumbar vertebra (L1 through L4) and of multiple ribs on both sides; and lacerations to his anus, kidney, abdominal wall, and lower right quadrant. Mr. Sweigart's right leg was amputated below the knee; because of the severe injuries to and infection of his left leg, he has had limited ability to stand and to walk since the accident and is still at risk for losing the left leg.

57.     As a direct result of the actions, omissions, or inactions of the Defendants, Plaintiff Sweigart's serious and permanent injuries required extended hospitalizations and rehabilitation and will, in the future, require medical and rehabilitation therapy.

58.     As a direct result of the actions, omissions, or inactions of the Defendants, Plaintiff Sweigart has incurred and will in the future incur significant medical expenses for his care and treatment.

59.     As a direct result of the actions, omissions, or inactions of the Defendants, Plaintiff Sweigart has been unable to return to work.

60.     As a direct result of the actions, omissions or inactions of the Defendants, Plaintiff Sweigart has suffered a loss of earnings and in the future will suffer a loss of earning capacity.

61.     As a direct result of the actions, omissions, or inactions of the Defendants, Plaintiff Sweigart has suffered and will in the future suffer pain, mental and emotional anguish, embarrassment, fear, humiliation, frustration, loss of "well-being," and other intangible injuries.

62.     As a direct result of the actions, omissions, or inactions of the Defendants, Plaintiff Sweigart has been prevented from and, in the future, will be prevented from performing his normal activities and is and will be unable to pursue normal and ordinary pleasures of life.

## COUNT I – NEGLIGENCE
**(Direct Liability and Vicarious Liability for the Negligence of Defendant Patten)**
**Travis S. Sweigart v. Defendant Voyager Trucking Corp.**

63.     As defendant VTC remarks on its website, "[t]rucking safety is our first priority, which is instilled at every level of our company.... Safety is more than physical inspections; our employees receive safety training on a regular basis."

64.     Defendant VTC knew that appropriate safety training of its drivers (including Mr. Patten) was essential not only to protect the well-being of its own drivers, but also to protect the well-being of other motorists who would encounter VTC drivers in the course of their work.

65.     Defendant VTC recognized that its failure to exercise reasonable care in the safety training of its drivers increased the risk of harm to motorists encountered by the drivers.

66.     As a corporation and business entity, defendant VTC acted through its agents, servants and employees (including Defendant Patten).   Defendant VTC thus bears vicarious liability for the negligent conduct of Mr. Patten that took place during the course and scope of his employment.

67.     Defendant VTC additionally bears direct liability for the negligent performance of its own safety undertakings and responsibilities.

68.     Defendant VTC's carelessness and negligence consisted of, among other things, the following acts and/or omissions:

    a.      Providing inadequate training, guidance and supervision to its agents, servants, and employees (including Defendant Patten) related to the safe operation of commercial vehicles;

    b.      Not exercising due care in the selection, hiring, orientation and safety training of its drivers;

    c.      Violating its obligations as set out in 49 CFR §390.11

    d.      Violating state, federal and industry safety standards and regulatory requirements with respect to the interstate transportation of municipal waste;

e.      Failing to have an adequate system or competent individual responsible for ensuring compliance with the regulations promulgated by the Federal Motor Carrier Safety Administration ("FMCSA");

f.      Failing to comply with FMCSA regulations;

g.      Failing to implement and enforce policies and procedures consistent with United States Department of Transportation ("USDOT") regulations governing driving and operational safety of commercial motor vehicles including drivers' hours of service, vehicle inspection, repair and maintenance; see 49 CFR §§ 392, 395 and 396;

h.      In light of the significant danger created by the transporting of extremely heavy loads by over-the-road tractor-trailers, failing to exercise due care;

i.      Failing to create a defined safety standard for the performance of its tractor-trailer drivers;

j.      Inadequately instructing its tractor-trailer drivers on the specific dangers associated with left-hand turns;

k.      Inadequately instructing its tractor-trailer drivers on right-of-way procedures;

l.      Inadequately instructing its tractor-trailer drivers on the specific dangers associated with moving into the right of way of a motorcycle;

m.      Inadequately instructing its tractor-trailer drivers on the specific dangers associated with driving at night; and

n.      Such other acts and/or omissions constituting carelessness and negligence as shall become evident during discovery.

69.      As a direct and proximate result of the negligence of defendant VTC, its agents, servants and employees (including defendant Patten), plaintiff Travis Sweigart sustained serious injuries and damages as outlined previously in the Complaint.

WHEREFORE, Plaintiff Travis Sweigart demands of Defendant VTC, jointly and severally, compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars together with delay damages, interest, costs of suit and such other relief that the Court deems just.

### COUNT II – NEGLIGENCE *PER SE*
### MOTOR VEHICLE CODE - 75 Pa.C.S.A. §§ 3322 and 3323
### Travis S. Sweigart v. Defendant Kevin J. Patten

70.    Plaintiff realleges and incorporates by reference every preceding paragraph as though set forth fully at length.

71.    A violation of the Pennsylvania Motor Vehicle Code constitutes negligence *per se*.

72.    Pursuant to sections 3322 and 3323 of the Motor Vehicle Code, Defendant Patten had a duty to yield the right-of-way to Mr. Sweigart's motorcycle.

73.    Mr. Patten failed to yield the right-of-way in violation of the Motor Vehicle Code.

74.    As a direct and proximate result of Mr. Patten's violation of the Pennsylvania Motor Vehicle Code, plaintiff Travis Sweigart sustained serious injuries and damages as outlined previously in the Complaint.

WHEREFORE, Plaintiff Travis Sweigart demands of Defendant Kevin J. Patten, jointly and severally, compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars together with delay damages, interest, costs of suit and such other relief that the Court deems just.

### COUNT III – NEGLIGENCE
**Travis S. Sweigart v. Defendant Kevin J. Patten**

75.    Plaintiff realleges and incorporates by reference every preceding paragraph as though set forth fully at length.

76.    Prior to Plaintiff's Accident, defendant Kevin Patten was aware or should have been aware that his failure to understand and to comply with the basic safety rules associated with the operation of a commercial tractor-trailer could expose other motorists to serious risk of catastrophic injury or death.

77.    When Defendant Patten undertook to drive the tractor-trailer, he recognized or should have recognized that his undertaking implicated the protection of Plaintiff's safety and that his failure to exercise reasonable care increased the risk of harm to Plaintiff.

78.     Defendant Patten performed his undertaking in a negligent and grossly negligent manner that resulted in Plaintiff's accident.

79.     The negligence, gross negligence, negligence *per se* and carelessness of Mr. Patten consisted of, but is not limited to, the following:

    a.  Operating the tractor-trailer in a manner which was violative of the codes, statutes, rules, and regulations of the Commonwealth of Pennsylvania with respect to the operation of motor vehicles, including but not limited to 75 Pa.C.S.A. §§ 3322 and 3323;

    b.  Failing to ensure that his commercial tractor-trailer could clear Mr. Sweigart's travel lane before entering the intersection;

    c.  Following inadequate procedures to ensure safety while driving at night, including failing to clean the reflectors on the trailer to improve conspicuity of the trailer;

    d.  Failing to obey applicable traffic laws and vehicle codes;

    e.  Failing to maintain a proper lookout;

    f.  Driving into plaintiff's path of travel;

    g.  Failing to yield the right-of-way to plaintiff;

    h.  Failing to maintain adequate control of the tractor-trailer;

    i.  Operating the tractor-trailer in a careless and dangerous manner;

    j.  Operating the tractor-trailer without due care;

    k.  Failing to note accurately the point and position of the plaintiff's motorcycle with respect to the roadway;

    l.  Failing to slow, or to stop the tractor-trailer when he knew or in the exercise of reasonable care should have known that unless he did so his vehicle would be struck by the plaintiff's motorcycle;

    m.  Failing to pay attention;

    n.  Such other acts and/or omissions constituting carelessness and negligence as shall become evident during discovery.

80.     As a direct and proximate result of the negligence and gross negligence of Defendant Patten, plaintiff Travis Sweigart sustained serious injuries and damages as outlined previously in the Complaint.

WHEREFORE, Plaintiff Travis Sweigart demands of the Defendant Kevin J. Patten, jointly and severally, compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars together with delay damages, interest, costs of suit and such other relief that the Court deems just.

RAYNES LAWN HEHMEYER

BY:     *Mark J. LeWinter, Esquire*
           Mark J. LeWinter, Esquire
           Martin K. Brigham, Esquire
           Daniel Bencivenga, Esquire

Date: January 28, 2021

Case ID: 210200025

## VERIFICATION

I, Travis S. Sweigart, hereby state that I am a plaintiff in this action and verify that the following statements are true and correct to the best of my knowledge:

The attached Complaint is based upon information that was provided to my counsel by me and information that has been gathered by my counsel in preparation for the lawsuit. The language contained within the Complaint is that of counsel and not of mine. I have read the Complaint and, to the extent that the Complaint is based on information given to my counsel by me, it is true and correct to the best of my knowledge, information and belief. To the extent that the content of the Complaint is that of counsel, I have relied upon my counsel in making this Verification.  I hereby acknowledge that the facts set forth in the aforesaid Complaint are made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities.

_____
TRAVIS S. SWEIGART

Date: 1/28/21